UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


ALLIANT PURCHASING, LLC,          )
                                  )
            Plaintiff,            )      Case No. 3:25-CV-00719-CHB
                                  )
v.                                )
                                  )
PREMIER, INC., et al,             )
                                  )      November 13, 2025
            Defendant.            )      Louisville, Kentucky


* * * * *
TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
BEFORE HONORABLE CLARIA HORN BOOM
UNITED STATES DISTRICT JUDGE
* * * * *



APPEARANCES:

For Plaintiff:            Seth T. Church
                          Alexa Elder
                          Grahmn N. Morgan
                          Dinsmore & Shohl LLP
                          100 W Main St, Ste 900
                          Lexington, KY  40507



Rebecca S. Boyd, RMR, CRR
Official Court Reporter
208 U.S. Courthouse
Louisville, KY 40202
(502) 625-3777



Proceedings recorded by mechanical stenography, transcript produced by computer.

APPEARANCES (Continued):

For Defendant:                    Harrison Carpenter
                                  Ryan D. Konstanzer
                                  McDermott Will & Schulte LLP
                                  The Brandywine Bldg
                                  1000 N West St, Ste 1400
                                  Wilmington, DE  19801

                                  Kayla M. Campbell
                                  Wicker Brammell PLLC
                                  323 W Main St, 11th Floor
                                  Suite 2100
                                  Louisville, KY  40202

For Defendants Non-Healthcare Holdings, LLC and Omnia
Partners, LLC:                    Jeremiah A. Byrne
                                  Frost Brown Todd LLC
                                  400 W Market St, 32nd Floor
                                  Louisville, KY  40202

(Begin proceedings via telephonic conference at 1:23 p.m.)

THE COURT:  Good afternoon.  This is Judge Boom.  We are on the record in the case *Alliant Purchasing, LLC versus Premier, Inc., Premier Healthcare Alliance, LP, Non-Healthcare Holdings, LLC, and Omnia Partners, LLC*.  Counsel, please state your appearances for the record, first for Alliant Purchasing.

MR. MORGAN:  Good afternoon, Your Honor.  Grahmn Morgan, Seth Church, and Alexa Elder for the plaintiff Alliant Purchasing.

THE COURT:  Good afternoon, and, Mr. Morgan, should I direct my questions to you on behalf of Alliant?

MR. MORGAN:  Yes, Your Honor.  Thank you.

THE COURT:  Anyone else on the line for Alliant Purchasing?  Mr. Morgan.

MR. MORGAN:  Oh, no, Your Honor.  Sorry.

THE COURT:  All right.  And on behalf of Premier, Inc. and Premier Healthcare Alliance.

MR. WICKER:  Good afternoon, Your Honor.  Kent Wicker for Premier.  I also have with me Harrison Carpenter, who is calling in from his vacation in India, where it's nearly midnight, and also Ryan Konstanzer and Kayla Campbell.

THE COURT:  All right.  And, Mr. Wicker, should I direct my questions related to Premier, Inc. and Premier, LP to you?

MR. WICKER:  Yes, Your Honor.  Thank you.

THE COURT: All right. And welcome, Mr. Carpenter. Hopefully this will be interesting enough that you will stay awake.

Mr. Wicker, anyone -- anyone else on the line for Premier?

MR. WICKER: No, Judge. That's it.

THE COURT: And are you also representing Non-Healthcare Holdings -- no. I'm sorry. That is -- I believe that's the Frost Brown Todd firm.

So let me ask on behalf of Omnia Partners and Non-Healthcare Holdings.

MR. BYRNE: Yes, Your Honor. Good afternoon. This is Jeremiah Byrne on behalf of both Non-Healthcare Holdings, LLC and Omnia Partners, LLC, and I'm the only one on the line for us, and you can direct all questions to me.

THE COURT: All right. Thank you. And I don't believe Non-Healthcare Holdings or Omnia Partners has made an appearance yet in the case. I presume you will be doing that forthwith?

MR. BYRNE: I will, Your Honor, yes.

THE COURT: And that was Mr. Byrne, correct?

MR. BYRNE: Yes. I'm sorry. Yes.

THE COURT: Since we are proceeding telephonically, I will try to specifically direct my questions to individual lawyers to try and keep the record clear, but you're also free to say, before you answer my question, "This is Mr. Byrne," and,

you know, in response, the following, and that will also help us keep the record a little clearer.

So, Counsel, before the Court -- just by way of background, this complaint in -- we're proceeding on 25-CV-719. I may not have mentioned the case number. We're on the record for a telephonic status conference in 3:25-CV-719.

This -- occasionally, I will refer to this as the new case or the second case, but by way of background, the complaint was filed on November the 6th. A motion for a temporary restraining order and preliminary injunction was filed at record entry seven.

On November the 7th, there was a motion to transfer the case that was granted by the previous judge because there is a related case that this Court already had been assigned, and that's the *Alliant versus Omnia and Premier, Inc.* it's 3:25-CV-6. That's the -- what we'll call the related case.

So this case was transferred to this Court, this judge, and had a pending TRO. I just entered an order setting -- I think I received the case a couple of days ago. I just entered an order setting this telephonic status conference and also requiring briefing on the TRO. So you-all have that, and that briefing will be required by the Court. Responses to the TRO are due Monday at noon. Any replies, Wednesday at 10:00 a.m.

I mentioned the related case previously. It's the same plaintiff. It only includes two of the defendants in the

current or later case, Omnia Partners, LLC, and Premier, Inc. That complaint was filed January 3rd, 2025, in the earlier case.

As mentioned, before the Court is the motion for a TRO and for a preliminary injunction. Everyone is aware of the standard for a TRO. My understanding is that the plaintiff has served the TRO on all of the defendants who had appeared, which would be the Premier, Inc. and Premier Healthcare Alliance, LP.

Is that correct, Mr. Wicker?

MR. WICKER: We've received it, Judge, yes.

THE COURT: Okay. And same question, Mr. Byrne. I know that you are getting ready to make your appearance on behalf of Omnia and NHH, but have you received a copy of the motion for the TRO?

MR. BYRNE: Yes, we have, Your Honor.

THE COURT: All right. Then, as I mentioned, there -- the Court balances four factors for a TRO. I want to point out usually the two most significant factors are the first two factors, strong likelihood of success on the merits, and the movant must also show they will suffer irreparable harm. So if I were the parties, those -- you don't want to ignore the other factors, but those are going to be likely the operative factors here.

I have read the motions for the TRO. Although the motion appears to be time-sensitive, the Court also believes that it's not so emergent that it convinced a briefing schedule should not

be entered. So, accordingly, the Court has entered a briefing schedule on the TRO.

I see the claims as two buckets of claims. One is breach of contract against the defendants Premier, Inc. and Omnia. They are the signatories on the agreements with Alliant, and then -- I'm sorry. I've gotten that exactly backwards, I believe.

But there is the breach of contract claim against the signatories to the agreement and then the tortious interference claim. I think there's also a breach of contract claim against the non-defendants, but I'm not super sure how strong that is.

In any event, as a general matter, my practice on TROs is to try and give you an indication of where the Court, you know, is headed or what the Court thinks about the motion so far. Before I do that, I will caution that I do not have the benefit, obviously, of a response or a reply. I will get that on Monday and on Wednesday.

But I did want to make a couple of observations about the breach of contract and likelihood of success on the merits on that claim. And I think probably these comments would also apply to the tortious interference, potentially, for the non-signatory defendants.

Again, the Court does not have the benefit of a response or reply, but the allegations in the current record, including the declarations submitted by Alliant, certainly make a fairly strong showing on the breach of contract.

The Court has reviewed those agreements.  Those agreements expressly provide that they may not be amended except in writing between the parties, and the GPO agreements also clearly provide that the parties, quote, agree that they -- they shall each comply with the terms of the recruitment and retention policy.  That's in the Premier agreement, that Exhibit 1, the third amendment, section five, and in the NHH agreement.  That's Exhibit 3 to the TRO, section 2.5.

So the allegation here is that the defendants have unilaterally changed those two policies to -- for cuts or undercut the agreement of the parties, and in that agreement, the parties have both agreed to comply with the terms of those policies, and they both agreed expressly that the GPO agreements cannot be amended except in writing signed by both parties.

The declaration is fairly strong in support of that.  Of course, the plaintiff must also prove irreparable harm, and the Court will have a few questions about that in a moment.

Regardless, no one should take too much stock in what the Court just said, because I don't have the benefit of a response from Premier, Premier, Inc. and Premier, LP or Omnia Partners.  However, I hope that it is more helpful than it is confusing for the Court to give you some indication of what I think are the relevant arguments, and where I think the record is leading the Court at this time.

Again, I don't have a full record, and that's what I will

have by the middle of next week.  So no one should take too much stock in what I'm saying right now, but I do want to give you my initial impressions, which, of course, are always subject to change upon the full record.

I do have a couple of merits-related questions for Alliant going to irreparable injury.  Oftentimes, you know, that is the rub even if you make a strong -- a showing of a strong likelihood of success on the merits.  There must be irreparable harm, not harm -- for the TRO, not harm that can be remedied by a damages award.

We started looking at the cases that you cited, and I think, in looking at the declaration, some of the initial questions that I had have been answered.  I believe Alliant argues, and the declaration provides some detail and some timing on this, that they claim that they were forced to cancel a business venture with an education-based collective, GovMVMT, and I believe that the declaration provides that occurred in October, so very recently.

And I think that is in paragraph 15 of the declaration, and they -- the declaration also outlines that -- or alleges, and I know I'm waiting on a response, that Omnia refused to allow Alliant to sponsor Leverage Buying Group and, instead, approached Leverage Buying Group directly about joining the Premier program.  I'm a little less clear on the timeframe for that.

Mr. Morgan, as far as the Leverage Buying Group, do you have a timeframe?  Because I don't believe that the declaration made that clear or you can show me where I missed it.  Mr. Morgan.

MR. MORGAN:  Your Honor, Grahmn Morgan, and in response to that question, looking at the declaration, it does not provide a timeframe.  That was an earlier timeframe than the GovMVMT.  It was probably, I would say, spring, summer of 2025.

I know that that relationship, while the denial occurred, I guess, via some communication back, I think the formal denial occurred a little bit later, and then the effort -- my understanding, the effort to get that entity to join under the NHH sponsorship directly occurred a little bit later than that. So it was -- it's a bit of a continuing pendulum, but I think it started in spring, summer of 2025.

THE COURT:  All right.  And anything that you want to add, any additional developments, just briefly, because I don't want to turn this into an evidentiary hearing.  I'm just trying to understand if there are any other significant immediate threats that you would -- you would argue are immediate threats to business relationships or business goodwill that have occurred over the GovMVMT and Leverage Buying Group.

MR. MORGAN:  Your Honor, I don't think I have anything specifically to add at this moment.  I know that the relationship with customers are sort of at an influx in relation to this whole implementation of the new policies, but I don't

have anything specific at the moment.

THE COURT:  All right.  Let me ask -- since I did ask Alliant about some very specific allegations, Mr. Wicker, I want to give you an opportunity to address those as well.  And I'm certainly not requiring you.  You can wait for your response to address the allegations related to GovMVMT and Leverage Buying Group, but since I did ask specifically about -- I have some merits-related questions for Alliant, I'm going to give you an opportunity, first Mr. Wicker and then Mr. Byrne, to address those.  And, again, you do not have to.  You are welcome to pass on that and address it as part of your response.

Mr. Wicker.  And you might still be on mute.  If you're -- you might be thinking, but if you're speaking, we cannot hear you.

MR. WICKER:  I'm sorry, Judge.  I never think that long.  I was on mute.  So let me just give you a couple additional data points, and then I'll turn to Mr. Carpenter who has more -- who is lead counsel and has more detail about the facts.

I would just note that the pleadings indicate that the Omnia policy changed in March.  The Premier policy changed effective October 1, and Premier has not enforced any new policy adversely to Alliant since the policy changed.  And then I'll just ask if Mr. Carpenter has detail on those particular claims.

MR. CARPENTER:  No, I don't have anything to add.

THE COURT: All right. And so, you know, Mr. Wicker, I'm going to follow up that Premier hasn't enforced any new policy change adversely against Alliant. Of course, that just begs the question for the Court on whether, you know, Alliant and Premier would be able to enter into some sort of standstill agreement that would, you know, either moot the TRO/preliminary injunction hearing completely or at least moot the TRO under a standstill agreement until -- if the parties want to pursue the preliminary injunction, then we can set it for a later preliminary injunction hearing.

So is that something --

MR. WICKER: I think we --

THE COURT: Go ahead, Mr. Wicker.

MR. WICKER: Yes, Judge, I think we could. It's our intention not to enforce this new policy adversely to Alliant pending resolution to some of these moving parts to our litigation. So we would be open to an appropriate standstill agreement while we figure some of these things out.

THE COURT: Understood. Mr. Morgan, I presume that is something that your client would be interested in?

MR. MORGAN: Yes, Your Honor. We would be happy to have a discussion with Mr. Wicker.

THE COURT: All right. So same questions, then, Mr. Byrne. If you would like to respond to the Court's questions on the merits about the two situations involving Gov -- GovMVMT and

Leverage Buying Group and then the additional question of, you know, whether or not you would be willing to enter into a standstill agreement that would moot the TRO, and then if the parties still can't resolve this issue, we can set it for a later preliminary injunction hearing.

So Mr. Byrne.

MR. BYRNE:  Yes, Your Honor.  It's Jeremiah Byrne, for the record.  First of all, we will respond in our responsive pleading, but we do -- as Mr. Wicker pointed out, the new policy from NHH was in March of this year; the Leverage Buying Group situation was in March, April of this year, and then the other one was October for Premier and October for Government MT -- MVMT.  So we don't think those show irreparable harm or immediate.

The question about the standstill.  This morning, there's been conversations between counsel for all of us, seeing how that would look, determining, well, whether that could -- we could outline the parameters of something like that.  So I guess my answer to you whether we wanted to talk about that is absolutely, we would, and we have already begun to outline some parameters of that.

So from my client's perspective, we would like to have a little bit of an opportunity to see if the three parties -- it's really six or five, but three main parties can come to a standstill agreement to moot the TRO.

THE COURT:  Okay.  So then my next question is:  Do -- would the parties -- I presume you don't want to procure and file briefs if it appears possible or likely that the TRO will be mooted.

So would it be in the interest of all parties for the Court to require a status report by Tuesday or Wednesday, remand the briefing schedule and, instead, require the parties -- order the parties to confer about a potential standstill agreement that would moot the TRO, also confer about a date and time for a potential preliminary injunction hearing, and then to update the Court through that status report, you know, on those and any related matters by, I don't know, Tuesday at the end of the day, Wednesday at noon?  You-all can help me with how long you think you need for that.

Mr. Morgan -- I'll just go down the list.  Mr. Morgan, I'd be happy to hear from you first and your thoughts on remanding the current briefing schedule, and how much time you need to discuss the standstill and preliminary injunction hearing with opposing counsel.  Mr. Morgan.

MR. MORGAN:  Thank you, Your Honor.  It is Alliant's position that I think the briefing schedule currently in place is reasonable and gives us enough time to work out a standstill agreement.  I think should -- the standstill should be, I believe, pretty straightforward with Premier, especially given Mr. Wicker's statements, and then based on my conversations this

morning with Mr. Byrne, I don't feel like it would be that complicated.

Having said that, I recognize that, you know, nobody wants to be out briefing things if we're going to get something done. So I'm happy -- I think Tuesday is plenty of time if we're going to come to an agreement, and I would be okay with a status indication on that day and then implementation of a briefing schedule thereafter.

THE COURT:  Okay.  So Tuesday at noon.  It seems that's plenty of time, especially with respect to Premier, and it's a discreet issue, so it seems Tuesday at noon should be fine with Omnia, but let me ask first.

Mr. Wicker, on behalf of Premier, would Tuesday at noon give you enough time to negotiate any type of standstill agreement and also discuss the issues related to a potential preliminary injunction hearing?

MR. WICKER:  I think it does, Judge.  We can -- we can work with that.

THE COURT:  All right.  Same question, Mr. Byrne.

MR. BYRNE:  Yes, Your Honor; that would work.

THE COURT:  Okay.  So I'm going to remand the briefing schedule.  I will order the parties to confer on these issues, the -- a standstill agreement that will potentially moot the TRO, the parameters of any preliminary injunction hearing that you might need, including any discovery, and then the timeframe

for that and, you know, any additional related matters.  That will be for Tuesday at noon.  If you were to file something that says, you know, we were unable to reach a standstill agreement, I will put you on an even more abbreviated TRO briefing schedule.

So hopefully that will incent everyone to -- and it appears that everyone's taking a reasonable approach to this, but, you know, I don't want to, you know, essentially remove the potential of a TRO from Alliant because they have agreed to, you know, give you additional days to negotiate a potential standstill.

It makes sense for everyone, but what I'm saying is it will be a very abbreviated briefing schedule if you're unable to reach an agreement by Tuesday at noon.

And, as I said, I try to give folks, you know, an indication what I think about the merits sort of in realtime, because -- and I think that illuminates the issues where I see that are strengths or are weaknesses in TROs.

But I do want to caution, again, that my initial reactions to the motion, you know, are not fully developed, because I don't have a full record, I don't have a response, and I don't have a reply, but, hopefully, it's more helpful for me doing this than it is confusing or harmful.

So that -- I don't think -- oh.  I do want to ask.  There is a related case.  I think the motion to transfer also requested a

motion to consolidate.  I have not consolidated the cases yet. If I entertain that, I'll probably require a separate motion and that it be fully briefed.  I'm not sure where I will land on that.

In the current action, at least for the signatories to the agreement, those folks are bound to arbitrate just as they are in the previous case or the related case.  So I think that's Premier, Inc. and Omnia Partners.  No, wait.  No.  I'm sorry.  I keep -- they're the ones who are subject to arbitration and are in arbitration, and these are the -- Omnia and Premier, Inc. are the non-signatories to the agreement.

So couple of questions that I have on the related case. There is a pending -- there are two pending motions to dismiss in that case.  The signatories to the agreement are in arbitration.  The non-signatories remain -- are the defendants in that case, Omnia Partners and Premier, Inc.

Sometimes the Court -- it makes sense to stay a case pending arbitration even with respect to the parties who are not bound by the arbitration agreement, because the arbitration might ultimately affect those claims.

I understand I may be surprising you-all with my questions on this, but you guys are far more well-versed in both of these matters than the Court is.  And so I want to ask first counsel for Alliant:  Does it make sense to stay the rest of 23 -- 25-CV-006, because the claims that are in arbitration might

have -- you know, might ultimately affect the claims against Omnia Partners, LLC and Premier, Inc.?

So that's just a general question, and I'm not going to hold you to it, but I'm just trying to figure some of this out.  Mr. Morgan.

MR. MORGAN:  Thank you, Your Honor, and I certainly appreciate that question and sort of the thought process for it.  I think my initial reaction is that our claims against the Inc. and -- Premier, Inc. and Omnia are independent of the arbitration.  And so I think our view would be that staying the case pending arbitration wouldn't -- wouldn't resolve those claims.

But I -- but I certainly understand the thought process there and, I guess, the fact that there are -- there is a competing -- or not competing.  A concurrently-filed arbitration.

THE COURT:  Okay.  To the extent that you want to comment on that, Mr. Wicker, same question.

MR. WICKER:  Yes, Judge.  We disagree.  We think those -- the case -- the claims in arbitration and the claims before you are virtually identical, and the only question is which body is going to decide them first.

If the -- if the Court rules, that is going to be likely collateral estoppel against one party or the other, and the arbitrator -- the arbitration panels are going to be bound to

follow that, and it could be that the Court is also influenced by the actions of the arbitration panel.

So the question comes down to who gets to go first. And there is the contractual -- we've contracted to have these issues decided by arbitration. That was our contractual right that the related parties of both Premier and Omnia have. So we think those -- that we should have those claims decided by the arbitration panel.

THE COURT: All right. Understood.

Mr. Byrne.

MR. BYRNE: Agree with Mr. Wicker. We believe that these should be -- should be stayed, and the arbitration panel should be the proper venue for all of these claims.

THE COURT: All right. Understood. So I'm going to take a look at that issue in the near term, and, you know, don't be surprised if the Court denies the current motion to dismiss without prejudice and just issues an order requiring the parties to brief the issue of whether this matter should be stayed pending arbitration. So I don't know that I'll do that, maybe I'll change my mind, but that's something that I'm trying to figure out.

And the current case with the TRO, 719, also involves the same agreement to arbitrate, but it does have the carveout for injunctive relief, which is why, you know, we're -- we're on -- why we're discussing this issue.

I presume the current case also, then, has non-signatories, so, ultimately, it could have the same, you know, issue of whether or not the Court should stay any additional claims pending the arbitration.  So I guess we'll cross that bridge when we get there.  First we'll deal with the TRO and the preliminary injunction, and then we'll go from there.

So that's all that I have on my list of issues to discuss with the parties.  Let me ask:  Mr. Morgan, anything else on behalf of Alliant?

MR. MORGAN:  Your Honor, thank you.  Grahmn Morgan.  I guess the one question I have is the motion to transfer and consolidate, I believe you indicated you were going to sort of put on hold the issue of consolidation until after some of the other issues are resolved.

Would a little -- I was a little confused as to whether you -- do we -- do you want us to file a response to that motion to consolidate within the time limit or should -- should we hold on that given everything else that's happening?

THE COURT:  Yeah.  That motion is no longer pending, because --

MR. MORGAN:  Okay.

THE COURT:  -- honestly, I thought it was just a motion to transfer, and then I do think that it mentions consolidation.  So I think Judge Stivers granted the motion to transfer, but no one has -- but, essentially, no one has

decided, and I think that that -- like I said, that motion was granted, but it was interpreted only as a motion to transfer.

So there is no current pending motion to consolidate. I presume that should a party wish to consolidate the actions, they can file the appropriate motion, and the other parties can file responses.

I don't -- again, I don't know where I will -- I will land on that, but, of course, I won't be -- I won't -- on that issue, I'm not going to encourage or prevent anybody from filing a motion if they feel strongly.

MR. MORGAN:  Thank you, Your Honor.

THE COURT:  Anything else, Mr. Morgan, on behalf of Alliant?

MR. MORGAN:  Nothing else, Your Honor.

THE COURT:  All right.  Mr. Wicker on behalf of Premier, Inc. or Premier, LP.

MR. WICKER:  Judge, we have previously filed and you granted motions for admission pro hac vice for our friends from out of town, and if the case is not consolidated, we would ordinarily file new motions in the new case.  Can I make that motion now orally to admit Mr. Carpenter and Mr. Konstanzer pro hac vice or would you like to see written motions?

THE COURT:  Go ahead and file the written motion. That way we've got a clear record for the Clerks Office.

MR. WICKER:  I will do that.  Thank you, Judge.

THE COURT:  Thank you.  Anything else, Mr. Wicker, on behalf of Premier, Inc. or Premier, LP?

MR. WICKER:  No, Your Honor.  Thank you.

THE COURT:  Mr. Byrne, anything else on behalf of Non-Healthcare Holdings, LLC and Omnia Partners, LLC?

MR. BYRNE:  Nothing else, Your Honor.  Thank you.

THE COURT:  All right.  Thanks, everyone.  We will be off the record, and I hope you have a good day, and, Mr. Carpenter, I hope you have a good vacation.  We'll be off the record.

(Proceedings concluded at 2:00 p.m.)

C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.


_____s/Rebecca S. Boyd\_\_\_\_\_        \_\_December 12, 2025\_\_\_
Official Court Reporter                          Date